[Civ. No. 18780. Fourth Dist., Div. One. Nov. 19, 1979.]

AMALGAMATED TRANSIT UNION, AFL-CIO,
LOCAL DIVISION 1309, Plaintiff and Appellant, v.
SAN DIEGO TRANSIT CORPORATION,
Defendant and Respondent.

COUNSEL

Domnitz & Prochazka, Richard D. Prochazka and Linda M. Ford for Plaintiff and Appellant.

Scales, Patton, Ellsworth & Corbett, Lawrence A. Patton and Ralph E. Hughes for Defendant and Respondent.

OPINION

**WIENER, J.**—The sole issue presented in this appeal is whether the court applied proper methodology in denying the Union's petition to compel arbitration. We conclude it did not. In reaching the merits of the Union's claim, the court failed to limit itself to the circumscribed role of passing only on the question of whether the claim on its face was covered by the arbitration provisions of the collective bargaining agreement. Accordingly, we reverse the order and instruct the court to compel arbitration in accordance with the agreement.

The San Diego Transit Corporation (Employer) operates the bus system in San Diego. Many bus drivers in the system are members of the Amalgamated Transit Union, AFL-CIO, Local Division 1309 (Union). On January 1, 1976, the parties entered into a collective bargaining agreement effective through December 31, 1978. The agreement includes the following:

"SECTION 3—MANAGEMENT PREROGATIVES

"A. The management of operations, including the type and kind of service to be rendered to the public and the equipment used, the number of employees, the maintenance of discipline and efficiency,...the discharge or discipline for proper cause and in accordance with the terms of this Agreement, are the sole responsibilities of the Corporation, except that any employee discharged or disciplined, shall have recourse through the grievance and arbitration procedure.

"B. It is recognized that the Corporation's rule book and bulletins are necessary, but that said recognition is not to be construed as meaning that said rule book and/or bulletins are a part of this contract. *No*

*rule or bulletin promulgated or enforced by the Corporation shall be valid if they violate any provision of this Agreement.* (Italics added.)

"C. *Union, having a grievance under Section 3B has recourse through the grievance and arbitration procedure.* (Italics added.)

"       .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Section 5 (D).   A grievance or dispute pertaining *only* to the interpretation or application of the terms of this Agreement that is not satisfactorily settled shall be submitted to arbitration upon the Union's written request....(Italics added.)

"       .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Section 6.... The majority decision of the [arbitration] board shall be final and binding upon the parties.

"       .   .   .   .   .   .   .   .   .   .   .   .   .   .

"SECTION 18 (2)—GENERAL PROVISIONS

"Nothing in this Agreement shall be construed as waiving any rights or protection granted to the Corporation, Union or any employee under any applicable Federal or State law."

In October 1978, the Union requested that drivers who were licensed and trained pursuant to Penal Code section 12403.7 be permitted, for self-defense, to carry Mace, a type of tear gas while on the job.[1] Applying the company's longstanding policy against carrying weapons, the Employer denied the request. The Union's petition to compel arbitration followed. After a hearing including evidence in the form of written declarations, the court found the Union's request did "...not present a claim which is arbitrable on the face of the agreement because [the Employer's] rule against the carrying of weapons does not, on its face,

---

[1]Penal Code section 12403.7 provides for the purchase, possession or use of tear gas or tear gas weapons where used solely for self-defense and where the person having possession has completed a course certified by the Department of Justice ((a) (5) (i)), received a permit issued by the police chief or sheriff having jurisdiction of the person's residence ((a) (6)), and the person is not a minor ((a) (6) (i)), a felon ((a) (6) (ii)), an addict of any narcotic drug ((a) (6) (iii)), and has not been convicted of misuse of tear gas ((a) (6) (v)).

violate any 'provision of the Agreement' between the parties, as described in Section 3B of that agreement." The court denied the petition to compel arbitration. The Union appeals.

■ Code of Civil Procedure section 1281.2 requires arbitration where an agreement to arbitrate the controversy exists. Rules governing analysis of this section in the context of labor disputes have developed to promote arbitration as the preferred method of dispute resolution. (*Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 180-184 [14 Cal.Rptr. 297, 363 P.2d 313].) "'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.'* (Italics added). (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 582 [4 L.Ed. 2d 1409, at p. 1417].)'" (*Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 892 [95 Cal.Rptr. 53, 484 P.2d 1397].)

■ The Employer first suggests the Union has no standing because the bus driver who carried Mace was neither disciplined nor discharged. This argument has no merit. The record is clear the legal action involves more than a request for an advisory opinion. The Employer requested an employee who carried Mace while on duty to cease doing so. The employee complied and through his union a request for arbitration of the grievance was submitted. It was not necessary for the employee to ignore his employer's instructions and be disciplined or discharged for the Union to have standing on the issue which it has raised. It would hardly be conducive to a pleasant atmosphere of industrial relations to require an employee be disciplined or terminated before a legitimate labor issue could be recognized and resolved through arbitration. The parties obviously recognized this and expressly provided for arbitration in situations other than those described in section 3(A). Arbitration without regard to either discharge or discipline of an employee is authorized under both section 3(C) and section 5(D) of the agreement.

■ The primary argument made by the Employer is since the arbitration provision is restricted to *only* the interpretation or application of the *terms* of the agreement, and since the Employer's rule book is not part of the agreement, arbitration is not proper. The Employer ignores, however, the express language of paragraph 3(C) which gives to the Union the right to arbitrate any grievance under section 3(B).

The limited function reserved to the courts in ruling on an application for arbitration is not whether the claim has merit, but whether on its face the claim is covered by the contract. (*Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4L.Ed.2d 1403,1407, 80 S.Ct. 1343, 1346].) Here, the Union claimed the rule prohibiting drivers from carrying Mace was contrary to section 18 (2) of the agreement as to those drivers who complied with Penal Code section 12403.7. On the face of the agreement that claim is arbitrable, for it draws into question the validity of a rule purportedly in conflict with the employee's rights under state law preserved to that employee under section 18 (2) of the agreement. Even claims ultimately determined to be without merit are properly submitted to arbitration, for this method of processing all covered claims, frivolous included, may have some therapeutic effect on management and labor contributing to a more stable and productive industrial environment. (*Steelworkers* v. *American Mfg. Co., supra,* 363 U.S. at p. 568 [4 L.Ed.2d at p. 1407].) Tempting as it may be for a court to reach the merits of a claim, it may not do so within the framework of the law defining our function. (*Id.,* at p. 568 [4 L.Ed.2d. at p. 1407]; *Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925, 931 [59 Cal.Rptr. 713, 428 P.2d 849]; *Northcutt Lumber Co.* v. *Goldeen's Peninsula* (1973) 30 Cal.App.3d 440, 443 [106 Cal.Rptr. 353].)

The order denying arbitration is reversed with instructions to the court to compel arbitration in accordance with the collective bargaining agreement.

Staniforth, Acting P. J., and Work, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.