Filed 8/29/16  Anderson v. Tri-City Healthcare Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LARRY ANDERSON, | D068456 |
| Cross-complainant and Respondent, | |
| v. | (Super. Ct. Nos. 37-2014-00009108-CU-BC-NC, |
| TRI-CITY HEALTHCARE DISTRICT et al., | 37-2014-00022523-CU-MC-NC) |
| Cross-defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Reversed and remanded with directions.

Gordon & Rees and Charles V. Berwanger, David K. Leatherberry for Cross-defendants and Appellants.

Law Offices of George Rikos and George D. Rikos for Cross-complainant and Respondent.

Appellants and cross-defendants, Tri-City Healthcare District and its board members Larry Schallock, Cyril F. Kellett, Julie Nygaard, Ramona Finnila, James Dagostino and Paul V.L. Campo, appeal an order denying their motion to compel

arbitration of respondent Larry Anderson's cross-claim for violation of section 1983 of title 42 of the United States Code (section 1983). Appellants contend that in light of the parties' broad arbitration agreement and California's strong public policy favoring arbitration, the cross-claim is arbitrable. We agree and therefore reverse and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Tri-City hired Larry Anderson as its Chief Executive Officer, and in August 2010, the parties signed an updated employment agreement containing an arbitration clause. In October 2013, Tri-City terminated Anderson's employment for, among other things, causing Tri-City to pay bills incurred by Medical Acquisition Company (MAC) that Tri-City claimed it had no legal obligation to pay. Pursuant to the arbitration clause, the parties first held a mediation. Anderson later wrote a letter to Tri-City, expanding the list of matters to be included in the parties' mediation/arbitration, including, "[i]mproper and illegal civil rights and constitutional violations, such as violation of due process, liberty and property interests vested in [him] by virtue of the U.S. and State of California Constitutions."

In July 2014, Tri-City sued MAC in superior court, alleging causes of action for violation of (1) Government Code section 1090 et seq., (2) the political reform act (Gov. Code, § 81000 et seq.) and (3) common law prohibitions against conflicts of interest, as well as (4) breach of a ground lease; (5) common count—money had and received; (6) declaratory relief and (7) eminent domain. Tri-City alleged Anderson "improperly convey[ed Tri-City's] assets and enter[ed] into major transactions with MAC to [Tri-

2

City's detriment]." MAC cross-complained against Anderson for indemnity, negligence and declaratory relief.

Anderson, in turn, cross-complained against Tri-City and the individual board members for express indemnity, respondeat superior, comparative indemnity, violation of section 1983, writ of mandate, and declaratory relief. Anderson alleged that Tri-City had wrongfully terminated him and further violated section 1983 and his constitutional right to procedural due process by depriving him of his property interest in his employment without informing him of the charges against him until after his termination, or conducting a hearing. Anderson specified he "had a liberty and property right in and expectancy of continued employment with Tri-City pursuant to the terms of the Employment Agreement, and to expect and receive the salary, benefits, deferred compensation, job security, severance benefits and other rights under the Employment Agreement, which prescribed only limited conditions or circumstances under which Anderson's employment with Tri-City could be terminated, or could be terminated without payment to Anderson of the severance benefits or other vested benefits under the employment agreement." (Some capitalization omitted.) Anderson alleged that the individual defendants, "as the board members of Tri-City, had the authority as final policy maker for Tri-City concerning the actions and acts alleged herein"; alternatively, "Tri-City ratified the actions and omissions of its board members." (Some capitalization omitted.)

In December 2014, Tri-City and the individual board members moved in the superior court to compel arbitration of Anderson's cross-complaint based on the

3

arbitration clause, which states: "Any controversy between [Tri-City] and [Anderson] arising from or relating to this Agreement or the relationship between the parties including, without limitation, involving the construction or application of any of the terms, provisions or conditions of this Agreement, shall be submitted to binding arbitration if one Party sends a written demand for binding arbitration to the other Party. *This Section . . . shall include and apply to all federal and state claims*, including, but not limited to: (i) wrongful termination, (ii) claims sounding in tort or contract, or (iii) any claim by [Anderson] of employment discrimination under federal or state law. [Tri-City] and [Anderson] *shall be deemed to have waived the right to litigate the claim in any federal or state court if either party tenders a written request for arbitration of any such claim(s).*" (Italics added.)

The arbitration clause specifies that as a condition of arbitration, the parties must "first attempt to resolve any dispute before a neutral mediator in a non-binding mediation. . . . the mediator shall be a California licensed attorney with at least fifteen years['] experience in and an emphasis in California and Federal Employment Law, or a retired or former judge of the Superior Court of the State of California or the Court of Appeals of the State of California."

The arbitration clause states: "Arbitration shall comply with and be governed by the provisions of the California Arbitration Act, unless otherwise precluded by California or Federal law. The Federal Arbitration Act shall apply only if enforcement of a particular provision of the California Arbitration Act would undermine the goals and policies of the Federal Arbitration Act." The arbitration clause requires that the arbitrator

4

be "a neutral, single retired or former judge of the Superior Court of the State of California or of the Court of Appeals of the State of California," or if the parties cannot agree on one, they may apply to the San Diego Superior Court to appoint one who meets the above-mentioned requirements.

The arbitration clause provides that the arbitrator "shall have exclusive jurisdiction over all legal and equitable claims, issues and remedies, so all types of relief available in a judicial proceeding shall be available to the Parties in the Arbitration." Anderson's employment agreement provides that following the arbitration, the arbitrator is required to prepare a written award stating the essential findings and conclusions upon which the award is based, so as to permit judicial review of the award in the state or federal court in San Diego County. It further provides that to determine the meaning of or resolve any ambiguity in the employment agreement, its language "shall be construed with the understanding both Parties were responsible for, and participated in, its preparation."

Anderson opposed Tri-City's motion to compel arbitration, arguing his cross-claims for indemnity, respondeat superior, and comparative indemnity arose from a dispute between Tri-City and MAC over separate contractual agreements to which he was not a party, and which did not involve his employment agreement. Anderson also argued that because the individual cross-defendants were not parties to his employment agreement, they were not proper parties to the arbitration; and Tri-City had waived its right to arbitration by pursuing litigation in the superior court.

5

In March 2015, Anderson sued Tri-City and the board members in federal district court, alleging a single cause of action for violation of section 1983.[1] Anderson repeated the same allegations as in his cross-claim, reiterating that his rights were violated because he did not receive a hearing as contemplated in his employment agreement. Anderson clarified that his references to Tri-City throughout the complaint included Tri-City's "directors, officers, employees, affiliates, controlling companies or agents" who managed, directed or controlled Tri-City's affairs.

In May 2015, the superior court granted the motion to compel arbitration of all Anderson's causes of action except that alleging a section 1983 violation, which it ruled was not subject to arbitration.

In September 2015, the district court granted Tri-City's motion to compel arbitration of Anderson's section 1983 cross-claim.[2]

---

[1]     The complaint states:  "Whenever this Complaint refers to any act or acts of Defendant, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies or agents of Defendant authorized such act while actively engaged in the management, direction or control of the affairs of Defendant, and/or by persons who are the alter ego of Defendant, or while acting within the scope of their agency, affiliation, control or employment."

[2]     Over Anderson's objection that the district court's order was not before the superior court when it made its own order, we grant appellants' request and take judicial notice of the district court's order because it involves the same section 1983 issue and some of the same parties, and we find it instructive. (*Brosterhous v. State Bar of California* (1995) 12 Cal.4th 315, 325 ["While the reviewing court may take judicial notice of matters not before the trial court, it need not do so."].)

DISCUSSION

Appellants contend that Anderson's section 1983 cross-claim is arbitrable under the arbitration clause's broad terms. By contrast, Anderson argues that a section 1983 claim is not arbitrable under *McDonald v. West Branch, Mich.* (1984) 466 U.S. 284, 290 (*McDonald*). Anderson further contends his cross-claim falls outside the scope of the arbitration agreement, which is limited to employment matters or the relationship between the parties. Anderson also argues that as nonsignatories of the employment agreement, the individual cross-defendants are not subject to its arbitration clause. Finally, Anderson contends Tri-City waived its right to arbitration by engaging in litigation, including by filing an "anti-SLAPP" motion and a demurrer.

## I. *Standard of Review*

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." (*Ibid*.) "Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)

We apply the de novo standard of review here because the trial court concluded that, as a matter of law, Anderson's section 1983 cross-claim was not arbitrable. This

7

purely legal question requires us to interpret the parties' arbitration agreement, the meaning of which is not subject to conflicting extrinsic evidence. Accordingly, we may consider legal arguments that were not raised in the superior court. (E.g., *Cal Sierra Construction, Inc. v. Comerica Bank* (2012) 206 Cal.App.4th 841, 851.)

### II. *General Law Regarding Interpretation of Arbitration Clauses*

The state Legislature "has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Consequently, it has enacted statutes specifically authorizing parties to enter arbitration agreements "to avoid the judicial forum altogether" (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 955; Code Civ. Proc., § 1281) and limiting the circumstances under which a court properly may decline to compel arbitration once it determines that a valid "agreement to arbitrate a controversy" exists (Code Civ. Proc., § 1281.2).

Likewise, courts implement the strong public policy favoring arbitration when determining whether a valid arbitration agreement exists and whether a particular disagreement lies within its scope by resolving doubts concerning the scope of arbitrable issues in favor of arbitration. (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26.) Indeed, the general rule is that "arbitration should be upheld 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.' " (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.)

8

Arbitration is foremost a creature of contract. (See, e.g., *Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 912-913.) "Arbitration's consensual nature allows the parties to structure their arbitration agreements as they see fit. They may limit the issues to be arbitrated, specify the rules and procedures under which they will arbitrate, designate who will serve as their arbitrator(s), and limit with whom they will arbitrate." (*Network Capital Funding Corporation v. Papke* (2014) 230 Cal.App.4th 503, 509.) Contracting parties also are free to negotiate and restrict the powers of an arbitrator and the universe of issues that he or she may resolve; " '[t]he powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.' " (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185.) "As for the requirement that there exist a controversy, it is sufficient the parties *contractually* have agreed to resort to a third party to resolve a particular issue." (*Coopers & Lybrand* (1989) 212 Cal.App.3d 524, 534.) "The limited function reserved to the courts in ruling on an application for arbitration is not whether the claim has merit, but whether on its face the claim is covered by the contract." (*Amalgamated Transit Union v. San Diego Transit Corp.* (1979) 98 Cal.App.3d 874, 879.) Thus, we look to the terms of the parties' contract to ascertain whether they agreed to arbitrate a particular disagreement or to restrict the arbitrator to resolving certain issues. (See *Rebolledo v. Tilly's, Inc., supra,* at pp. 912-913.)

"Unless given some special meaning by the parties, the words of a contract are to be understood in their 'ordinary and popular sense,' focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." (*City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, 248; see Code Civ.

9

Proc., § 1861; Civ. Code, § 1644.)  The term "any" is ordinarily understood to be expansive and all-encompassing:  "From the earliest days of statehood the courts have interpreted 'any' to be broad, general, and all embracing."  (*Burnsed v. State Board of Control* (1987) 189 Cal.App.3d 213, 217.)  The statutory definition of "controversy" for purposes of the statutes governing arbitration is broad and encompasses " 'any question arising between parties to an agreement whether such question is one of law or of fact or both.' " (Code Civ. Proc., § 1280, subd. (c); *Coopers & Lybrand, supra,* 212 Cal.App.3d at p. 534, fn. 5.)  As noted above, a court has interpreted Code of Civil Procedure section 1280, subdivision (c), expansively, clarifying that "[a]s for the requirement that there exist a controversy, it is sufficient the parties *contractually* have agreed to resort to a third party to resolve a particular issue."  (*Coopers & Lybrand, supra,* 212 Cal.App.3d at p. 534.)

### III.  *Anderson's Section 1983 Claim Is Arbitrable*

Applying the above law to the facts of this case, we conclude that Anderson's section 1983 cross-claim falls within the ambit of the parties' expansive arbitration clause, which states in mandatory terms:  "*Any* controversy between [Tri-City] and [Anderson] *arising from or relating to* this Agreement or the relationship between the parties *including, without limitation*, involving the construction or application of any of the terms, provisions or conditions of this Agreement, *shall be* submitted to binding arbitration."  (Italics added.)  The arbitration clause also includes several procedural safeguards like the arbitrator's qualifications, the requirement of a written final decision, and the recourse to the courts for certain matters.  We point out that Anderson

specifically requested of Tri-City that the section 1983 claim be arbitrated. On these facts, we conclude that Anderson's section 1983 claim is arbitrable.

Anderson nevertheless relies on *McDonald, supra,* 466 U.S. 284 and argues: "It has been well-established that arbitration is not a permissible substitute for a judicial proceeding in protecting one's federal statutory and constitutional rights, which [section] 1983 is designed to protect." Anderson's reliance on *McDonald* is misplaced. There, the court held that prior arbitration of a statutory claim (42 U.S.C. § 1983) under a collective bargaining agreement had no res judicata or collateral estoppel effect on the employee's right to file a subsequent lawsuit. (*McDonald,* at p. 292.) The Court reasoned that "an arbitration proceeding cannot provide an adequate substitute for a judicial trial." (*Ibid.*) However, the Court did not hold that section 1983 claims could not be arbitrated; rather, it pointed out in dicta that courts in the future would have to decide how much weight to accord such arbitrations. "[A]n arbitral decision may be admitted as evidence in a [section] 1983 action." (*McDonald,* at p. 292, fn. 13.)

In *Gilmer v. Interstate/Johnson Lane Corporation* (1991) 500 U.S. 20, the United States Supreme Court clarified its position with respect to arbitration of statutory claims. It disclaimed that *McDonald* precluded arbitration of any statutory claims, clarifying that *McDonald* rather dealt with the question of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. (*Gilmer, supra,* at pp. 33-35.) *Gilmer* held that although not all statutory claims may be appropriate for arbitration, where parties have agreed to arbitrate a specific statutory claim, the party seeking to avoid arbitration bears the burden of showing that Congress intended to preclude a

11

waiver of a judicial forum for that claim. (*Id.* at p. 26.) The court reasoned that the plaintiff had agreed voluntarily to arbitrate his statutory claim under the Age Discrimination in Employment Act (ADEA). The claim could be effectively vindicated in the arbitral forum; and mandatory arbitration was consistent with the flexible approach of the ADEA to resolving claims by informal methods which included conciliation, conference and persuasion, and with Congress's grant of concurrent jurisdiction to state and federal courts. *Gilmer* "stand[s] for the proposition that important social policies and public rights embodied in statutes prohibiting discrimination in employment can be appropriately resolved by arbitration. The Supreme Court has determined that the arbitration forum provides sufficient procedural safeguards and mechanisms for discovery 'to make the process suitable for discrimination claims' under such statutes." (*Spellman v. Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452, 462.)

In *Gilmer, supra,* 500 U.S. 20, the court emphasized that by agreeing to arbitrate, the plaintiff had traded the more extensive procedures available in the federal court for the simplicity, informality, and expedition of arbitration. The court rejected an argument that the purposes of the ADEA could not be adequately carried out because arbitration did not allow for broad equitable relief and class actions. Anderson does not cite any authority showing a clear congressional indication that parties may not be compelled to arbitrate section 1983 claims, and we found none. To the contrary, the above-quoted dicta in *McDonald, supra,* 466 U.S. 284 indicates that section 1983 claims are arbitrable under certain circumstances. Some district courts have concluded that section 1983 claims are arbitrable. (*McGee v. Armstrong* (N.D. Ohio, July 3, 2014, No. 5:11CV2751)

12

2014 U.S. Dist. LEXIS 91357, at \*26-27; *Bloom v. Jersey City Mun. Utilities Auth.* (D.N.J., Feb 8, 2008, No. 06-CV-3526 (WJM)) 2008 U.S. Dist. LEXIS 10046, at \*16; *Germaine Music v. Universal Songs of Polygram* (D. Nev. 2003) 275 F.Supp. 2d 1288, 1299.)  Unpublished federal court opinions are citable for their persuasive value.  (See *Haligowski v. Sup. Ct.* (2001) 200 Cal.App.4th 983, 990, fn. 4; *Bowen v. Ziasun Technologies, Inc.* (2004) 116 Cal.App.4th 777, 787, fn. 6.)

We reject Anderson's contention that his section 1983 cross-claim "does not arise from or relate to his employment agreement or the employer-employee relationship between the parties."  This contention is contradicted by Anderson's allegations in his complaint that he had a liberty and property interest in continued employment with Tri-City "pursuant the terms of the Employment Agreement" and he was terminated "without payment to [him] of the severance benefits or other vested benefits under the employment agreement."

We also reject Anderson's contention that the arbitration clause should be interpreted narrowly in light of the fact that the employment agreement provides examples of claims to be arbitrated, including wrongful termination and employment discrimination.  We do not limit the scope of the arbitration clause to these illustrative claims, particularly because the arbitration clause, without qualification, also states that "torts and contracts" and controversies involving state or federal law that arise from or relate to the employment agreement are arbitrable.  Further, we do not agree with Anderson's argument that the section 1983 claim is not arbitrable because the employment agreement's list of a mediator's qualifications, which specifically states that

13

he or she be an "attorney with at least fifteen years['] experience in and an emphasis in California and Federal Employment Law" points to the arbitration clause being limited to employment matters. We point out that the mediator's qualifications are stated in the disjunctive and may also include a retired or former superior or appellate court judge.

Anderson summarily claims that appellants waived their right to arbitration by delaying more than one month after he filed his cross-complaint to seek arbitration, and by thereafter engaging in litigation activities such as answering his cross-complaint and filing anti-SLAPP and demurrer motions. We deem this argument, which the trial court did not address, as forfeited.

An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 (*Guthrey*); Cal. Rules of Court, rule 8.204(a)(1)(C).) As a general rule, "[a]n appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

An appellate argument is a carefully honed assertion of legal error and resulting prejudice. The job of appellant is to demonstrate to this court the trial court erred in

14

specific ways which resulted in identifiable prejudice to the parties. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 628, pp. 704-705; accord, *Guthrey, supra,* 63 Cal.App.4th at p. 1115.) Anderson has not done so here as to his waiver argument.

Nor will we presume prejudice, which Anderson is obligated to demonstrate. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106 ["[O]ur duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"]; *Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601 ["[t]o presume in favor of error or prejudice would be directly contrary to the policy of this state"].)

Anderson has not sufficiently set forth the applicable law governing this contention, including the standard of review (see *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337 [we review for substantial evidence]), or the fact that based on the public policy favoring arbitration, claims of waiver receive "close judicial scrutiny" and the "party seeking to establish a waiver bears a heavy burden." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [courts consider (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the

15

proceedings; (5) whether important intervening steps like discovery had taken place; and (6) whether the delay affected, misled or prejudiced the opposing party].) "Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes,* at pp. 1195-1196.) The deficiencies in Anderson's appellate briefing preclude Anderson from meeting his heavy burden.

Finally, we reject Anderson's claim that because the board members did not sign the arbitration agreement, the section 1983 cross-claim is not arbitrable as to them. Anderson alleged in his cross-complaint that the board members were acting as Tri-City's agents. Accordingly, "they are entitled to the benefit of the arbitration agreement." (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1210.)

DISPOSITION

The order denying the motion to compel arbitration is reversed and remanded with directions to the trial court to grant the motion. The parties are to bear their own costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

PRAGER, J.*

---

*    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.