[No. C060707. Third Dist. May 31, 2012.]

CAL SIERRA CONSTRUCTION, INC., Plaintiff and Appellant, v. COMERICA BANK et al., Defendants and Appellants.

COUNSEL

Downey Brand, Matthew J. Weber; Lewis Brisbois Bisgaard & Smith and Frank R. Perrott for Plaintiff and Appellant.

Wolkin Curran and Donald J. Colucci for Travelers Casualty and Surety Company of America as Amicus Curiae on behalf of Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Geraldine A. Freeman and Mathew R. Troughton for Defendant and Appellant Comerica Bank.

Tobin & Tobin and C. Darrell Sooy for Defendant and Appellant United Commercial Bank.

Frandzel Robins Bloom & Csato, Craig A. Welin and Hal D. Goldflam for Defendant and Appellant Pacific Western Bank (formerly Affinity Bank).

## OPINION

**HULL, J.**—In *Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803 [132 Cal.Rptr. 477, 553 P.2d 637] (*Connolly*), the California Supreme Court upheld the constitutionality of the state's mechanic's lien and stop notice laws against a claim that they permit a taking of an owner's property without due process. The court concluded the procedures available to a property owner to obtain interim relief from unjustified claims before the claimant files suit on the lien or stop notice provide sufficient safeguards against such claims delaying or otherwise interfering with a construction project until the dispute can be resolved. (*Id.* at pp. 808, 827–828.)

In *Lambert v. Superior Court* (1991) 228 Cal.App.3d 383 [279 Cal.Rptr. 32] (*Lambert*), the Court of Appeal pointed out that where a claimant has already filed suit to enforce a mechanic's lien or stop notice, the procedures identified in *Connolly* may no longer be available to the property owner. In such case, the owner may instead file a motion in the enforcement action to have the matter examined by the trial court. On such motion, the claimant bears the burden of establishing the "probable validity" of the claim underlying the lien or stop notice. (*Id.* at p. 387.) If the claimant fails to meet that burden, the lien and stop notice may be released in whole or in part. We refer to this procedure as a "*Lambert* motion."

In this matter, plaintiff Cal Sierra Construction, Inc. (plaintiff), filed suit to enforce a mechanic's lien and stop notice in connection with a construction project financed by defendants Comerica Bank, Affinity Bank and United Commercial Bank (the banks). The banks filed a *Lambert* motion, asserting plaintiff's claims are invalid because plaintiff either has been paid for the work done or did not perform the work claimed. The trial court agreed and entered an order releasing the mechanic's lien and stop notice. The court thereafter denied plaintiff's motion for new trial and the banks' motion for attorney fees.

Plaintiff appeals both the order releasing its mechanic's lien and stop notice and the order denying its motion for new trial. The banks cross-appeal from the denial of their motion for attorney fees.

We conclude the banks were not entitled to file a *Lambert* motion to release the mechanic's lien and stop notice. *Connolly* was concerned with the due process rights of property owners, not lenders, and *Lambert* sought to provide additional procedural safeguards not identified in *Connolly*. We therefore conclude the trial court erred in granting the banks' *Lambert* motion. Because we so conclude, plaintiff's appeal from the order denying its motion for new trial and the banks' appeal from the order denying attorney fees are rendered moot. We reverse the order granting the banks' *Lambert* motion.

FACTS AND PROCEEDINGS

On September 26, 2007, plaintiff initiated this action against Dunmore Homes, Inc. (Dunmore Homes), Dunmore Croftwood, LLC (Dunmore Croftwood), the banks, and Valley Utility Service, Inc. Plaintiff later filed a first amended complaint.

According to the pleadings, Dunmore Croftwood is the owner of certain real property in Placer County (the property) on which plaintiff performed construction services pursuant to a master agreement entered into between plaintiff and Dunmore Homes and various letters of authorization executed thereafter. The banks provided funding to Dunmore Croftwood for the construction work and received a deed of trust on the property as security.

Plaintiff commenced work on the various improvements but, on August 23, 2007, Dunmore Homes and Dunmore Croftwood demanded that plaintiff cease all further work. At the time, plaintiff was allegedly owed $2,368,622.25 for work already performed.

Plaintiff immediately recorded a mechanic's lien on the property for the amount claimed. On September 25, 2007, plaintiff served the banks with a stop notice in the amount of $2,368,622.25 and later a bonded stop notice in the same amount.

The first amended complaint sets forth five causes of action: (1) breach of contract, (2) foreclosure of the mechanic's lien, (3) unjust enrichment, (4) account stated, and (5) enforcement of the stop notice.

The banks filed a cross-complaint against plaintiff, seeking a declaration of the superiority of their deed of trust over plaintiff's mechanic's lien.

On July 25, 2008, the banks filed a *Lambert* motion seeking a decree releasing real and personal property from the mechanic's lien and stop notice. In support of the motion, the banks presented declarations explaining that plaintiff had already been paid by Travelers Casualty & Surety Company of America (Travelers) for most of what it claimed to be owed. The banks further asserted much of the remaining work had not been completed as plaintiff claimed.

In opposition to the banks' motion, plaintiff submitted declarations explaining that the claimed work had in fact been done and that, while plaintiff had been paid by Travelers for much of what it was owed, it had assigned its mechanic's lien and stop notice rights to Travelers. Thus, plaintiff asserted, the full amount claimed is still subject to the stop notice.

Travelers moved to intervene in the action in order to enforce that portion of the mechanic's lien and stop notice claims that had allegedly been assigned to it.

On September 11, 2008, the trial court granted the banks' motion for release of the mechanic's lien and stop notice. The court concluded plaintiff "failed to present any evidence supporting the validity of its claim against [the] Defendants." Travelers thereafter withdrew its motion to intervene.

The banks moved for an award of attorney fees as the prevailing party. Plaintiff in turn moved for a new trial. In support of its motion for new trial, plaintiff argued the trial court overlooked evidence supporting its claim. Plaintiff further argued the court was without authority to resolve the stop notice claim by way of a motion intended to protect property owners alone.

The trial court denied the motion for new trial. The court explained it had not overlooked any evidence. The court further concluded release of the mechanic's lien and stop notice was appropriate in light of plaintiff's failure to reduce its claim following payment by Travelers. The court did not address whether resolution of the mechanic's lien and stop notice claims by way of a *Lambert* motion was proper under the circumstances.

The court thereafter denied the banks' motion for attorney fees and granted plaintiff's motion to tax costs. The banks dismissed their cross-complaint for declaratory relief.

As noted, plaintiff appeals the orders granting the banks' motion for release of claims and denying plaintiff's motion for new trial. The banks appeal the order denying their motion for attorney fees.

DISCUSSION

I

*Contractor Remedies*

■ Article XIV, section 3, of the state Constitution provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." To implement this constitutional provision, the Legislature enacted Civil Code section 3109 et sequitur. (Further undesignated section references are to the Civil Code.) "[T]he purpose of a mechanic's lien is 'to prevent unjust enrichment of a property owner at the expense of a laborer or material supplier . . . ,' " whose work enhanced the value of the property. (*Abbett Electric Corp. v. California Fed. Savings & Loan Assn.* (1991) 230 Cal.App.3d 355, 360 [281 Cal.Rptr. 362].)

To secure a mechanic's lien, an eligible contractor "must file a preliminary notice with the owner, the general contractor and the construction lender within 20 days after furnishing the materials (§§ 3097, 3114), and thereafter record his claim of lien within 90 days of completion of the improvement (§ 3116). If a notice of completion (see § 3093) or notice of cessation of work (see § 3092) has been recorded, the claimant must record his claim of lien within 30 days of such notice. (§ 3116.) [¶] Once recorded, the mechanics' lien constitutes a direct lien (§ 3123) on the improvement and the real property to the extent of the interests of the owner or the person who caused the improvement to be constructed (§§ 3128, 3129). The lien is subordinate to recorded encumbrances antedating the commencement of the work of improvement [citations], but takes priority over all subsequent encumbrances (§ 3134). . . . The lien terminates unless the [contractor] initiates a suit to foreclose the lien within 90 days after recording of the claim of lien. (§ 3144.)" (*Connolly, supra,* 17 Cal.3d at p. 808.)

■ Section 3156 et sequitur provides for stop notices in private construction projects. A stop notice establishes a lien on unexpended construction funds and is an independent but cumulative remedy available to contractors. (*A-1 Door & Materials Co. v. Fresno Guar. Sav. & Loan Assn.* (1964) 61 Cal.2d 728, 732 [40 Cal.Rptr. 85, 394 P.2d 829].) After first giving 20 days' preliminary notice, a contractor may serve a stop notice on the owner or any construction lender. (§§ 3158, 3159.) Upon receipt of such notice, an owner must withhold sufficient funds to pay the claimant. (§ 3161.) However, a construction lender is required to do so only if the notice is accompanied by a

bond. (§ 3162.) "The obligation of the owner or lender to withhold funds terminates unless the claimant files suit to enforce the stop notice within 90 days after expiration of the period for recording claims of lien. (§ 3172.)" (*Connolly, supra*, 17 Cal.3d at p. 810.)

"Although the mechanics' lien may provide adequate protection for [contractors] when the owner finances the improvement from his own funds, such liens can be wiped out by the foreclosure of a lender's trust deed. The value of the stop notice lies in the fact that its lien attaches to the unexpended balance of the loan, not to the land, and thus survives foreclosure of the trust deed. The stop notice claimant also acquires a right to the fund superior to that of any assignee from the owner or contractor (§ 3166), and superior to the lender's contractual right to employ unexpended funds to complete the work of improvement [citations]." (*Connolly, supra*, 17 Cal.3d at p. 809, fn. omitted.)

II

Lambert *Motion*

In *Connolly*, the California Supreme Court addressed whether the state's mechanic's lien and stop notice laws effected a taking of a significant property interest without due process. (*Connolly, supra*, 17 Cal.3d at p. 806.) The court first acknowledged the recording of a mechanic's lien or a stop notice pursuant to state law constitutes a Fourteenth Amendment taking of the owner's property. (*Connolly*, at pp. 813–814.) Nevertheless, despite the absence of any review by a judicial officer prior to such taking, the court concluded the procedures available to the owner to protect against unjustified liens provide sufficient due process protections. (*Id.* at pp. 827–828.) In particular, because the owner must be given advance notice of the lien or stop notice, the owner is afforded an opportunity to resolve the matter, post a bond or, in the case of an unsupported claim, file suit for injunctive relief. (*Id.* at pp. 820, 822.) The owner is thereby afforded an opportunity for a judicial hearing before any lien is imposed. And even after a lien or stop notice is recorded, the owner can seek injunctive or declaratory relief from an unjustified claim. (*Id.* at pp. 822–823.) The owner is also entitled to a full hearing before being permanently deprived of property through enforcement of the lien or stop notice. (*Id.* at p. 822.)

In weighing the seriousness of the owner's deprivation against the interests of the contractor claimant, the high court concluded that "the recordation of a mechanics' lien, or filing of a stop notice, inflicts upon the owner only a minimal deprivation of property; that the laborer and materialman have an interest in the specific property subject to the lien since their work and

materials have enhanced the value of that property; and that state policy strongly supports the preservation of laws which give the laborer and materialman security for their claims." (*Connolly, supra*, 17 Cal.3d at p. 827.) The court further concluded, "the safeguards provided by California law to protect property owners against unjustified liens are sufficient to comply with due process requirements." (*Id.* at pp. 827–828.)

■ In *Lambert*, the Court of Appeal established a further procedural safeguard for owners subject to an unjustified mechanic's lien or stop notice. Where a claimant has not yet recorded a lien or stop notice or has not yet sued to foreclose, the owner still has available the remedies laid out in *Connolly*. But where the lien claimant has already filed suit to foreclose the lien, a more expeditious remedy would be for the owner to file a motion in that action. (*Lambert, supra*, 228 Cal.App.3d at p. 387.) In such motion, the question presented is not the ultimate merit of the contractor's claim but whether the contractor should be entitled to retain the security of the mechanic's lien or stop notice pending resolution of the matter. (See *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 318 [130 Cal.Rptr.2d 641].) According to the *Lambert* court, "[i]f a claimant may use a mechanic's lien to protect the eventual award of an arbitrator, it follows from the due process discussion in *Connolly* that an owner may ask the court to remove an improper lien while arbitration is pending." (*Lambert*, at p. 388.) In such motion, the issue presented is limited to the "probable validity" of the lien or stop notice. (*Lambert*, at p. 387.) The task of a reviewing court is, in turn, "to ensure that the trial court's factual determinations are supported by substantial evidence." (*Howard S. Wright Construction Co. v. Superior Court, supra*, 106 Cal.App.4th at p. 320.)

Plaintiff contends the banks were not entitled to utilize the *Lambert* procedure to challenge their mechanic's lien and stop notice. They argue such procedure is available only to the owner whose property or credit is tied up pending resolution of the underlying dispute.

The banks contend plaintiff forfeited this issue by failing to raise it in opposition to their *Lambert* motion below. In opposition to the banks' motion, plaintiff argued payment by Travelers did not reduce the claims, because those claims had been assigned to Travelers to the extent of payment. Plaintiff also presented evidence that it had completed all work claimed. Plaintiff did not challenge the banks' right to use the *Lambert* procedure. That issue was not raised until plaintiff's new trial motion.

" '[A] party to an action may not for the first time on appeal change the theory upon which the case was tried.' " (*Sylve v. Riley* (1993) 15 Cal.App.4th 23, 26, fn. 1 [18 Cal.Rptr.2d 608].) However, an exception to the general rule

is recognized where the question presented is one of law. (*Ibid.*; *Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15 [1 Cal.Rptr.2d 805]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 406, p. 464.) A legal argument may be raised for the first time in a new trial motion or on appeal " 'so long as the new theory presents a question of law to be applied to undisputed facts in the record.' " (*Nippon Credit Bank v. 1333 North Cal. Boulevard* (2001) 86 Cal.App.4th 486, 500 [103 Cal.Rptr.2d 421].) The question whether the banks are entitled to pursue a *Lambert* motion under the circumstances presented here is one of law based on undisputed facts. It is therefore properly before us.

In *Lambert*, the Court of Appeal made clear its concern was with the issues raised in *Connolly* regarding *an owner's* right to be free from a taking of his or her property without due process. The *Lambert* court explained: "In [*Connolly*], the California Supreme Court found that the statutory scheme satisfied the requirements for procedural due process because a property owner has a 'variety of measures by which he can protect himself against the impact of such a lien . . . .' [Citation.] The primary question we address is whether owners' motion to remove the lien, not mentioned in *Connolly*, is one of those measures." (*Lambert, supra*, 228 Cal.App.3d at pp. 385–386.)

In discussing *Connolly*, the *Lambert* court noted: "The court upheld the constitutionality of a ' "taking" ' of property by mechanic's lien. In doing so it did not define or limit the procedures for removing liens. The court mentioned restraining orders, injunctions, and declaratory relief actions only to illustrate ways an owner could seek relief before a claimant sued to enforce a lien. It did not suggest that an owner could not challenge a lien by a motion to remove in a claimant's action to enforce the lien. [¶] If a claimant has not yet imposed a lien or, having imposed it, has not yet sued to foreclose it, an owner's speediest remedy is through proceedings for injunctive or declaratory relief. But where a claimant has already brought an action to foreclose a lien, the owner may more easily file a motion in the pending action. *Connolly* is premised on the availability of speedy remedies. An owner's right to use the speediest remedy should not be lost because a claimant has won the race to the courthouse." (*Lambert, supra*, 228 Cal.App.3d at p. 387.)

In *Connolly*, the high court made clear the property interests at stake were those of the property owner alone. In finding that the mechanic's lien and stop notice can effect a taking of the owner's property, the court cautioned: "[N]either the recording of a mechanics' lien nor the filing of a stop notice constitutes a taking of the *lender's* property. The mechanics' lien attaches to the landowner's realty; the stop notice garnishes the landowner's credit; neither encumber[s] property of the lender. Although the filing of a stop

notice imposes upon the lender a liability to the claimant which the lender has not contractually agreed to assume, the imposition of that liability does not constitute a 'taking' of property in the constitutional sense." (*Connolly, supra,* 17 Cal.3d at p. 814, fn. 9; accord, *Grinnell Fire Protection Systems Co. v. American Sav. & Loan Assn.* (1986) 183 Cal.App.3d 352, 357 [228 Cal.Rptr. 292].) To underscore the foregoing, the court went on to explain a stop notice deprives the owner "of the interim use of a *special fund* set aside to pay construction debts" (*Connolly,* at p. 820), "garnish[es] only accounts set aside to pay [contractor] claims" (*id.* at p. 821), and "attaches only to a limited line of credit set aside to pay construction expenses" (*id.* at p. 825).

Regarding the interests of lenders, the high court noted: "When a stop notice is filed, the lender, threatened with personal liability if it disregards the notice, may divert credit needed to pay for future construction to comply with the stop notice claim. Thereby denied the money on which he relied to complete the project, the owner may be forced into default on the loan, and consequently lose his property." (*Connolly, supra,* 17 Cal.3d at p. 813, fn. omitted.) But because the lender has already committed the funds to the owner's use on the construction project, it is not the lender's funds that are at stake and not the lender's interests that are in jeopardy.

The banks argue their interests are at stake in this matter, because the property owner is in default on the construction loan and, therefore, ownership of the loan funds has reverted to them. However, the banks provide no legal authority for this proposition. At the time plaintiff allegedly performed the work, the loan funds were committed to the construction project and represented property owners' credit and the security on which plaintiff relied. This is not changed by the fact the owner may later have defaulted on the loan. The banks retain their security through the real property, security that has allegedly been enhanced by plaintiff's work. While it is certainly arguable that any remaining loan funds after payment for work completed before default reverts to the banks and is no longer committed to the construction project, the same cannot be said of funds for work already performed. The banks retained no protectable interest in those funds.

■ In the present matter, the trial court permitted the banks to utilize an expedited procedure designed by the Court of Appeal to protect the interests of a property owner from having its project suspended indefinitely by an unjustified lien. But since the banks had already committed the funds to the construction project, and their interests were protected by their security interest in the property, the same concerns do not apply to them. By permitting the banks to utilize the expedited *Lambert* procedure where their property interests were not at stake, the court deprived plaintiff of its right to

trial on its stop notice claim, in violation of due process of law. We conclude the trial court erred in granting the banks' motion to set aside the mechanic's lien and stop notice.

Having concluded the trial court's order cannot stand, we need not address plaintiff's arguments regarding the denial of its new trial motion. For obvious reasons, we also need not address the banks' appeal of the denial of their motion for attorney fees. Because the banks were not entitled to bring a *Lambert* motion, they are likewise not entitled to attorney fees. Finally, the banks have filed two motions seeking judicial notice of various documents purportedly supporting their claim that plaintiff has been paid by Travelers for the work done on the property. In light of our conclusion in this matter, we do not address the merits of plaintiff's underlying claim and, therefore, the documents presented by the banks are not relevant to this appeal. We therefore deny both motions for judicial notice.

### DISPOSITION

The order of the trial court granting the banks' motion to set aside the mechanic's lien and stop notice is reversed and the matter is remanded to the trial court with directions to enter a new order denying the motion. Plaintiff shall receive its costs on appeal.

Raye, P. J., and Nicholson, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied August 29, 2012, S203871. Werdegar, J., did not participate therein.