Filed 7/29/21  LSG Las Tunas v. A & R Corp. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LSG LAS TUNAS, LP,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A & R CORPORATION, INC.,<br><br>Defendant and Appellant. | B307534<br><br>(Los Angeles County Super. Ct. No. 19STCV45587) |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Appeal dismissed, and petition for a writ of mandate denied.

Moon & Dorsett and Dana M. Dorsett for Defendant and Appellant

The Jamison Law Firm, Guy E. Jamison, and Chelsea M. Clayton for Plaintiff and Respondent.

* * * * * *

A & R Corporation, Inc. (A&R) recorded a mechanic's lien in the amount of $3,571,411.88 (which it later amended to $3,124,065.97) against a parcel of property on which it worked as a general contractor. In response to a motion by the property's owner to eliminate or reduce the mechanic's lien, the trial court reduced the lien to $55,744. A&R appeals. We conclude that we do not have jurisdiction over this appeal. Construing the appeal as a petition for a writ of mandate, we conclude that the petition lacks merit and deny it.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

#### A.  *Construction Agreement*

In August 2016, LSG Las Tunas, LP (LSG) hired A&R to serve as its general contractor for a mixed residential and commercial complex LSG wanted to build on a parcel of property it owned in San Gabriel, California (the property).

On August 8, 2016, LSG and A&R executed a written General Contractor Agreement (Agreement). In the Agreement, A&R promised to build a complex with commercial space on the ground floor and 35 condominium units on the upper floors for no more than $12,948,500 and to have the complex "substantially completed" within 485 days from the start of construction (the project). The Agreement contemplated that the parties could alter its terms with "change orders," but required any such orders to be in writing and signed by LSG or its agent. The Agreement also provided that LSG was to retain 10 percent of each payment to A&R or its subcontractors, and that LSG was required to

2

release those retained funds only upon "Final Completion" of the project, where "Final Completion" was defined as when "all of the Work has been finally completed and accepted by" LSG.

A&R began construction on February 20, 2017, so the initial completion date was 485 days later—that is, in May 2018.

### B.    *Problems and termination of Agreement*

Although the parties hotly dispute who is to blame, it is undisputed that the project ended up with cost overruns and delays.

On May 30, 2019, the parties entered into a written amendment to the Agreement, which granted A&R an extension until October 15, 2019, to complete the project.

After A&R did not complete the project by the extended deadline, LSG terminated the Agreement on January 25, 2020. It is undisputed that, at that time, at most 88 percent of the project was completed.

Two or three weeks after termination, A&R purported to execute five "change orders" that obligated LSG to pay an additional $1,876,821.46.  None of these change orders was signed by LSG or by any agent of LSG.

## II.    Procedural Background

### A.    *LSG's Lawsuit*

On December 19, 2019 (which was after A&R failed to meet the extended deadline but before LSG terminated A&R), LSG sued A&R.  In the operative first amended complaint filed on April 10, 2020, LSG sued A&R for (1) breach of contract, (2) negligence, (3) breach of implied warranty, (4) fraud by deceit

3

and omission, and (5) disgorgement of payments made to an unlicensed subcontractor.[1]

## B.     *A&R's Mechanic's Lien*

On April 23, 2020, A&R recorded a mechanic's lien against the property in the amount of $3,571,411.88 for "[g]eneral contracting services, construct apartments, grading, concrete, mechanical, electrical, & drywall finishes."

In a May 15, 2020 email, A&R explained that the debts comprising the $3,571,411.88 fall into three categories.  The first category consists of money that LSG owed to A&R or its subcontractors on four different invoices, and which totaled $999,963.16.  The second category consists of money that LSG retained from its payments to A&R pending final completion, and which totaled $694,627.26.  The third category consists of money due under the five unsigned change orders dated after the Agreement's termination, and which totaled $1,876,821.46.[2]

## C.     *LSG's Motion to Reduce or Remove the Mechanic's Lien*

On May 26, 2020, LSG filed a motion to remove or reduce A&R's mechanic's lien. In its motion, LSG argued that (1) A&R's lien was filed prematurely, (2) LSG had already paid the bulk of

---

[1]     LSG also sued one of A&R's subcontractors for disgorgement, A&R's attorney for legal malpractice, and an insurance company for indemnity.  However, these claims are not before us.

[2]     In later filings, A&R, for the first time, alleged a fourth category of debts totaling $491,316, but that amount was not included in the original breakdown and A&R does not defend it on appeal.  We therefore consider it abandoned.

the invoices owed to A&R and its subcontractors (the first category), and (3) A&R was legally precluded from recording a lien that encompassed retention payments and amounts due under unsigned change orders (the second and third categories). In support of its second argument, LSG attached proof of payment as well as releases from liability from subcontractors for all but $55,744 of the $999,963.16 allegedly owed in the first category.

On June 11, 2020, A&R filed its opposition to LSG's motion. A month later, on July 10, 2020, A&R filed a partial release of the mechanic's lien of $447,345.91 from the first category, which reduced the total amount of the lien to $3,214,065.97.

On July 9, 2020, LSG filed a reply brief in support of its motion.

### D.    *A&R's Cross-Complaint*

On July 14, 2020, A&R filed a cross-complaint against LSG and others. Among other claims,[3] A&R sued LSG to foreclose on its mechanic's lien.

### E.    *Trial Court's Order Partially Granting LSG's Motion to Reduce the Mechanic's Lien*

On July 27, 2020, the trial court held a hearing on LSG's motion. Although the court had previously indicated the hearing would encompass an evidentiary hearing, the court upon "further review[]" concluded that no additional evidence was "needed" to decide the motion. The court elected not to decide whether A&R's

---

[3]    The nine other claims A&R alleges are for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) negligence, (4) fraud, (5) negligent misrepresentation, (6) intentional interference with contractual relations, (7) negligent interference with a prospective economic advantage, (8) indemnity, and (9) contribution.

5

lien was prematurely recorded, but ruled it appropriate to reduce the amount of the lien to the amount of money still owed under the invoices (the first category)—$55,774. The court reasoned that proof of payments and releases showed that most of the alleged unpaid invoices had been paid, that A&R's lien could not include money properly retained by LSG because there "clearly" was a "good faith dispute" over A&R's final completion of the project, and that A&R's lien could not include the money owed under the change orders because they were unsigned by LSG and hence inoperative under the Agreement's plain terms.

The trial court entered its order on September 1, 2020.

### F.    *A&R's Motion for Reconsideration*

In a motion for reconsideration, A&R, for the first time, argued that LSG's motion to reduce the lien was procedurally improper. Following receipt of an opposition from LSG, the trial court denied the motion as (1) being procedurally improper itself, and (2) without merit—finding LSG's motion to be procedurally appropriate under *Lambert v. Superior Court* (1991) 228 Cal.App.3d 383 (*Lambert*).

### G.    *A&R's appeal*

A&R filed this timely appeal.

### H.    *A&R's writ petition*

While this appeal was pending, A&R filed a petition for a writ of mandate raising the same arguments set forth in this appeal. We denied the writ without an opinion on October 29, 2020.

## DISCUSSION

In this appeal, A&R argues that the trial court erred in reducing its mechanic's lien because (1) LSG's motion to remove or reduce the lien was procedurally inappropriate, and (2) the

6

court lacked any basis for reducing the amount of the lien. LSG counters that we lack jurisdiction to entertain A&R's appeal.

## I. Appellate Jurisdiction

As a general rule, we may only entertain appeals from final judgments. (Code Civ. Proc., § 904.1, subd. (a).) This rule is designed "'to prevent piecemeal dispositions and costly multiple appeals .'" (*Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 133-134.) One corollary of this "one final judgment" rule is that "'"interlocutory or interim orders are not appealable."'" (*Id.* at p. 133.) An order is interlocutory—and hence generally not appealable—if, notwithstanding the order, "issue[s are] left for future consideration" by the trial court. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698.) Here, the validity and amount of the debt that A&R claims LSG owes are still "left for future consideration." The trial court's order merely reduced the amount of A&R's mechanic's lien that operates solely to *secure* potential debt during the pendency of the action to establish that debt. (*Cal Sierra Construction, Inc. v. Comerica Bank* (2012) 206 Cal.App.4th 841, 850 (*Cal Sierra*).) Indeed, the trial court's order did not even finally adjudicate the lien, as the court left the lien partially intact rather than removing it entirely; thus, there has been no "judgment" determining that "no lien exists" and "remov[ing] the lien form the public records." (*Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 318 (*Howard S. Wright Construction*).)

A&R responds with three grounds it asserts provides appellate jurisdiction to review the interlocutory order reducing the amount of its lien. First, it argues that because the trial court's order reducing the amount of the mechanic's lien also directs A&R to record that order in the public records, the order

7

constitutes a mandatory injunction and is therefore appealable under Code of Civil Procedure section 904.1, subdivision (a)(6). We reject this argument because it equates ministerial acts with mandatory injunctions; if accepted, nearly every interlocutory order would be appealable (since most court orders require a party to give notice or undertake some other ministerial act) and our Legislature's careful delineation of appellate jurisdiction would be thrown out the proverbial window. Second, A&R argues that the trial court's order is "an . . . order . . . entered in an action to redeem real . . . property from . . . a lien thereon, *determining the right to redeem and directing an accounting*" and is therefore appealable under Code of Civil Procedure section 904.1, subdivision (a)(8). (Italics added.) Although the order reducing the amount of the mechanic's lien could be viewed as an order entered in an action to redeem real property from a lien thereon, that action was not to "determin[e] the right to redeem" *and* to "direct[] an accounting," and thus falls outside the language of this statutory ground for appellate jurisdiction. Third, A&R argues that *Howard S. Wright Construction*, *supra*, 106 Cal.App.4th at p. 318, held that "the grant of a motion to remove a mechanic's lien" is effectively "a final[] appealable judgment." That is true, but as noted above, the trial court's order in this case just *reduced* the mechanic's lien; it did not *remove it entirely*.

We need not linger on this question of appellate jurisdiction, because we retain the discretion to construe A&R's appeal as a petition for a writ of mandate (*Olson v. Cory* (1983)

35 Cal.3d 390, 400-401), and elect to exercise that discretion in this case.[4]

## II.     The Law of Mechanic's Liens, Generally

By mandate of the California Constitution and by statute, "contractors, laborers, and suppliers" have the right to record a so-called "mechanic's lien" against any property "upon which they have bestowed labor or furnished material for the value of such labor done and material furnished," at least for "private works of improvement" like the project in this case.  (Cal. Const., art. XIV, § 3; Civ. Code, § 8000 et seq.; *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1092; *Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 826 (*Connolly*); *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 422 (*RGC Gaslamp*); *Basic Modular Facilities v. Ehsanipour* (1999) 70 Cal.App.4th 1480, 1483-1484 (*Basic Modular*).)[5]

A general contractor may record a mechanic's lien against property for which it is overseeing construction as long as it (1) gives notice to the property's owner prior to recording the lien (§§ 8200, subds. (a)(1) & (c), 8410, 8400, subd. (a)), and (2) records the lien against the property (§ 8416).  Once the lien is recorded, the lien encumbers title to the property and has priority over subsequently recorded instruments.  (*Tracy Price Associates v.*

---

**4**     We acknowledge that this court has already rejected a writ from A&R in this case which presented the same arguments asserted here.  However, as that writ was summarily denied, we find it appropriate to issue this opinion and explicitly address the merits of A&R's arguments.

**5**     All further statutory references are to the Civil Code unless otherwise indicated.

*Hebard* (1968) 266 Cal.App.2d 778, 787; *RGC Gaslamp, supra*, 56 Cal.App.5th at p. 422.)

In *Connolly, supra*, 17 Cal.3d 803, our Supreme Court held that a mechanic's lien constitutes a taking of the owner's property through state action (*id.* at pp. 811, 815), but held that a contractor's right to record such a lien—even without any prerecording judicial review of the lien's validity—did not offend procedural due process because there existed "a variety of measures [or mechanisms]" by which an owner could obtain provisional relief from a mechanic's lien or "speedy" judicial review of such a lien, either before or immediately after its recording. (*Id.* at p. 807; see also § 8480, subd. (b) [noting that statutory method for seeking to release a mechanic's lien is not exclusive, even when that method is not followed by a timely action to foreclose on the lien].)

*Connolly* enumerated a few of those postlien mechanisms, such as (1) the owner's statutory right to seek release of the mechanic's lien upon posting a bond in the amount of 125 percent of the lien (*Connolly, supra*, 17 Cal.3d at p. 808; § 8424), and (2) the owner's right to file an action for declaratory or injunctive relief challenging the mechanic's lien, and then to seek more immediate relief within that action by moving for a preliminary injunction (*Connolly*, at pp. 822-823).

*Lambert, supra*, 228 Cal.App.3d 383, enumerated an additional postlien mechanism—namely, that the owner may file a motion in the contractor's pending action to foreclose on a mechanic's lien. (*Id.* at pp. 386-387.) *Lambert* noted that *Connolly* had not listed this as a possible "speedy," postlien mechanism for obtaining judicial review of a mechanic's lien, but held that *Connolly*'s list of mechanisms was meant to be

10

illustrative—not exhaustive. (*Id.* at p. 387.) Subsequent decisions have allowed so-called "*Lambert* motions" by owners. (E.g., *RGC Gaslamp*, *supra*, 56 Cal.App.5th at p. 423, fn. 8; cf. *Cal Sierra*, *supra*, 206 Cal.App.4th at p. 846 [*lenders* may not file a *Lambert* motion].)

## III. Merits

### A. *Procedural vehicle*

A&R argues that the trial court erred in entertaining LSG's motion to reduce its mechanic's lien because, in A&R's view, *Lambert* authorizes a property owner to file such a motion only when the facts are identical to those in *Lambert*—that is, when the contractor has already filed an action to foreclose on the lien. Because the viability of procedural vehicles for judicial review of mechanic's liens presents a question of law, our review is de novo. (*Kaanaana v. Barrett Bus. Servs., Inc.* (2021) 11 Cal.5th 158, 165.)

We conclude there was nothing wrong with LSG's motion for three reasons.

First, A&R has forfeited its right to challenge the procedural propriety of LSG's motion by waiting until its motion for reconsideration to object on this ground and further failing to argue on appeal that the trial court erred in denying LSG's motion for reconsideration. (See Code Civ. Proc., § 1008, subd. (g).) Up until its motion for reconsideration, in its papers and at the hearing, A&R treated LSG's motion as procedurally appropriate under *Lambert* and instead argued why LSG was not entitled to relief under *Lambert*.

Second, the facts of this case *do* mirror those in *Lambert*. Although there was no action to foreclose upon the mechanic's lien pending at the time LSG *filed* its motion, A&R filed its cross-

11

complaint alleging a foreclosure claim before the trial court heard LSG's motion. As a result, there was a pending action by a contractor to foreclose upon the lien at the time the trial court *considered and granted* LSG's motion. *Lambert* is on all fours.

Lastly, we reject A&R's contention that *Lambert* should be limited to its facts. *Connolly* held that California's expedited mechanic's lien procedures do not offend the procedural due process rights of property owners *because* owners are able to obtain speedy pre- or postlien, judicial review of those liens. (*Connolly*, *supra*, 17 Cal.3d at pp. 821-828.) *Connolly* articulated two of the available mechanisms, and *Lambert* articulated a third. *Connolly* and *Lambert* nowhere state that the mechanisms they identify are the sole mechanisms. Nor would they, because limiting the mechanisms by which owners can obtain speedy, postlien judicial review of a contractor's mechanic's lien would make postlien review less available and thus make it more likely that California's procedures violate the owner's due process rights. More specifically, LSG's resort to a *Lambert*-type motion in this case makes sense. At the time LSG filed its initial complaint in December 2019, A&R had not yet filed its mechanic's lien. When A&R did so in April 2020, LSG availed itself of a logical mechanism for obtaining judicial review of that lien—namely, filing a motion in LSG's already pending case. A&R seems to suggest that LSG should have either (1) filed a second lawsuit for declaratory and injunctive relief (which would inevitably be consolidated with this case), as suggested in *Connolly*, or (2) waited for A&R to file a claim to foreclose on the lien, as occurred in *Lambert*. Because LSG won the "race to the courthouse," A&R argues, LSG must be forced to wait even longer. But A&R's suggestions would end up *delaying* judicial

12

review of the lien, which is wholly at odds with the rationale of *Connolly*.

**B.    *Consideration of* Lambert *motion***

When a property owner files a motion to eliminate or reduce a mechanic's lien, the contractor bears the burden of establishing the "probable validity" of the propriety and amount of its lien by a preponderance of the evidence.  (*Lambert*, *supra*, 228 Cal.App.3d at p. 387 [adopting probable validity standard]; *Cal Sierra*, *supra*, 206 Cal.App.4th at p. 850 [same]; accord, *Connolly*, *supra*, 17 Cal.3d at p. 822 [noting mechanisms for "obtain[ing] a speedy hearing on the probable validity of the lien"]; *Basic Modular*, *supra*, 70 Cal.App.4th at p. 1485 ["[t]he lien claimant has the burden of establishing the validity of the lien"]; *Howard S. Wright Construction*, *supra*, 106 Cal.App.4th at p. 319 [same].)  This standard requires the contractor to prove a "'prima facie case'" by establishing the "'probable outcome of the litigation'" in its favor.  (*Howard S. Wright Construction*, at pp. 319-320.)  We review a trial court's determination of the probable validity of a mechanic's lien for an abuse of discretion, reviewing subsidiary factual findings for substantial evidence and subsidiary legal rulings—such as the meaning of statutes—de novo.  (*Id.* at p. 320; *Basic Modular*, at p. 1485; *Cal Sierra*, at p. 850; *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250.)

*1.    Unpaid invoices to A&R and its subcontractors (the first category)*

The trial court did not abuse its discretion in reducing the portion of the lien designed to secure payment of unpaid invoices from $999,963.16 to $55,744 because LSG provided proof of payment and corresponding releases from liability that pertained

13

to all but $55,744 on those invoices.  Indeed, the fact of payment is undisputed because all that A&R offered in response was its criticism that LSG had not provided *A&R* with sufficient paperwork to verify the payments.  Critically, A&R did not offer any evidence to suggest that LSG had not, in fact, paid the amounts reflected in the checks and releases.  Because the undisputed facts support the trial court's reduction of the lien amount for the first category, the court's ruling regarding the first category was supported by substantial evidence and was not an abuse of discretion.

A&R responds that the trial court's reduction is defective because (1) the court erroneously construed the facts in the light most favorable to LSG, when the law requires that the facts be construed in the light most favorable to a mechanic's lien claimant (citing *Connolly*, *supra*, 17 Cal.3d at pp. 826-827; *Schmitt v. Tri Counties Bank* (1999) 70 Cal.App.4th 1234, 1242; and *Solit v. Tokai Bank* (1999) 68 Cal.App.4th 1435, 1442); and (2) the court erroneously denied A&R an evidentiary hearing. A&R's arguments lack merit.  To begin, the court did not construe the facts in the light most favorable to LSG; instead, it relied on evidence that LSG presented regarding payment of the invoices and A&R's failure to refute LSG's evidence with contrary evidence.  Although there were several facts in dispute between the parties, the payments made to satisfy the invoices cited as the basis for the mechanic's lien was not one of those facts in dispute.  Further, the cases A&R cites all require *statutes* to be construed in favor of mechanic's lien claimants—not the *facts*. The court also did not err in denying A&R an evidentiary hearing.  An evidentiary hearing is only required upon a showing of good cause.  (*Lambert*, *supra*, 228 Cal.App.3d at p. 387.)

14

Because the court applied the law to the undisputed facts before it, and because A&R made no proffer (to the trial court or on appeal) as to what evidence it would have adduced at an evidentiary hearing to dispute the facts presented by LSG, an evidentiary hearing would have served no purpose.

2. *Retention payments (the second category)*

The trial court did not abuse its discretion in eliminating the $694,627.26 portion of A&R's lien representing the aggregate total of the 10% of each invoice amount that LSG retained because it is undisputed that (1) the Agreement entitled LSG to retain those amounts—and hence they were not due to A&R—until the project was "Finally Complet[ed]" and accepted as such by LSG, and (2) the project was, at best, 88 percent complete and had most certainly not been accepted by LSG.

A&R's sole response is that section 8812 permits a property owner to retain funds from a "direct contractor" only "[i]f there is a good faith dispute between the owner and direct contractor as to a retention payment due" (§ 8812, subds. (a) & (c)), and the trial court here made no finding of a "good faith dispute" between LSG and A&R.  We reject this argument for two reasons.  First, LSG has retained payments due *pursuant to the Agreement*, not section 8812.  A&R has not cited any authority for the proposition that section 8812 displaces—rather than merely supplements—contractual provisions defining the prerequisites for when an owner must release retained funds to a contractor.
Second, even if we viewed section 8812 as controlling, the trial court expressly found that there "clearly" was a "good faith dispute" over A&R's final completion of the project.

15

### 3. *Unsigned change orders (the third category)*

The trial court did not abuse its discretion in eliminating the $1,876,821.46 portion of A&R's lien reflecting the money owed on five posttermination change orders because it was undisputed that (1) the Agreement required all change orders to be signed by LSG or its agent, and (2) none of the change orders at issue were signed by LSG or its agent.

A&R responds that it is still entitled to assert a lien over the five unsigned, posttermination change orders by virtue of section 8430, which in pertinent part provides that a lien claimant may "includ[e] in a claim of lien work performed . . . *as a result of . . . breach of the contract"* between the owner and contractor. (§ 8430, subd. (c), italics added.) In support of this argument, A&R cites *Basic Modular*, *supra*, 70 Cal.App.4th at p. 1484. Based on this authority, A&R argues that it is entitled to include the debt reflected in the unsigned change orders because those orders followed LSG's breach of the Agreement by terminating A&R. A&R is wrong for two reasons. First, section 8430 by its plain terms does not apply. Section 8430 only applies to work performed as a result of a breach of contract; the breach of contract A&R alleges is its termination; and A&R did not perform any work *as a result of* its termination because its work on the project stopped the moment it was terminated. Thus, the posttermination change orders fall outside of section 8430's ambit. Second, the absence of LSG's signature on the change orders means that, under the terms of the Agreement, those orders are simply nullities. A&R points to *Basic Modular* as proof that a lien can be asserted to collect on work performed pursuant to the oral modification of a contract. (*Basic Modular*, at p. 1485 [so noting].) But *Basic Modular* accepted the oral

16

modification in that case as valid; here, the modification alleged to be effected by the five unsigned change orders in this case is *invalid* because those orders do not comply with the Agreement's requirements for a valid modification.  In sum, section 8430 does not empower us to rewrite the parties' contract.[6]

## DISPOSITION

The appeal is dismissed, and the petition for a writ of mandate is denied.  LSG is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ

---

[6]     Because we affirm the trial court's ruling on this basis, we have no occasion to decide whether the court's ruling is also correct because the unsigned change orders sought to collect "delay damages" that may not be included in a mechanic's lien.